**ANDERSON, ESTATE OF, In Re et v ANDERSON et**

Ohio Appeals, 1st Dist, Hamilton Co

No 5190. Decided March 8, 1937

Paxton & Seasongood, Cincinnati, for appellees.

DeCamp, Sutphin & Brumleve, Cincinnati, for Appellants.

## OPINION

By MATTHEWS, J.

The first question raised by this appeal from the Court of Common Pleas of Hamilton county is whether executors appointed on December 14th, 1931, who failed to sell corporate stocks, owned by the estate, sufficient to pay debts and legacies within three months of their appointment are liable in the absence of any fraud or negligence, to residuary legatees for the difference between the selling price and the lowest market price during the three month period immediately succeeding their appointment.

At the time of the death of William Harvey Anderson he was under very few unconditional monetary obligations as a principal obligor, and the aggregate of these debts was very small. He was under a liability of $45,000.00 as guarantor of the indebtedness of The W. H. Anderson Company to The Central Trust Company. If the estate paid this obligation it was questionable whether it could recover the full amount from The W. H. Anderson Company on its obligation as principal debtor to indemnify the estate. During the year succeeding the death of William Harvey Anderson, The W. H. Anderson Company paid $7,500.00 of this debt. As the end of the year approached, the executors prepared to pay the debts and legacies which aggre-

gated about $104,000.00. Under the order of the Probate Court they sold sufficient stock to do this. They paid the Central Trust Company the balance of $37,500.00 on the debt of The W. H. Anderson Company, and thereby acquired ownership of the debt against that Company. Later, by consent of all those interested, this debt was compromised for $15,375.00, so that the final loss to the estate on the guaranty to The Central Trust Company was $22,125.00.

During the three months succeeding their appointment, the executors filed the schedule of assets and liabilities for inheritance tax purposes, and filed their application to fix such tax. The schedule showed the facts as they have been stated here. The order fixing the tax was not made until November, 1932.

As all debts and specific legacies have been paid in full, the only persons interested in this question are the residuary legatees and the executors. The residuary legatees raised the question by exceptions to the final and current accounts filed within eight months of the filing of the final account. The contention is made that these exceptions were not filed in time, but we deem it clear that all current accounts may be so far opened as to correct all mistakes and errors upon exception to the final account filed within eight months of the filing of such final account with the exception that there may not be a relitigation of a matter that has already been actually adjudicated by the court, after actual notice to the persons adversely interested.

The appellants contend that as the executors were appointed prior to January 1st, 1932,—the effective date of the new Probate Code—that law has no application under the provisions of §26 GC, and that, therefore, §10697, GC, as it read at the time of the executors' appointment governs all proceedings in the estate, and they further contend that that section imposes an absolute duty upon executors to sell within three months of their appointment sufficient assets, including stocks, if necessary, to pay all the debts of the estate, failure to perform which duty renders them liable for all resulting damage to the estate in favor of those beneficially interested.

On the other hand, the appellees contend that the new Probate Code superseded §10697, GC, and that as there is no such limitation contained in that code, the legal basis of the appellants' contention does not exist, and they further contend that if §10697, GC, applies, it does not bear the interpretation placed upon it by the appellants.

Although more than five years have elapsed since the effective date of the new Probate Code, this court has never been required to predicate its judgment upon a decision of the question whether it was applicable to actions taken subsequent to its effective date in estates that were in process of administration at its effective date. In the case of In Re Estate of Steltenpohl, 7 O.O. 120, the point was mentioned, but as the right had been preserved, no matter which applied, we found it unnecessary to choose between them.

And in the case at bar we only mention the point, but do not decide it. We again find it unnecessary.

Sec 10697, GC, as it was when this administration began was as follows, so far as necessary to quote here:

"Personal Property, Executor or Administrator May Sell.—Within three months after the date of his bond, the executor or administrator shall sell the whole of the personal property belonging to the estate, which is liable for payment of debts and is assets in his hands to be administered, except promissory notes, unless as otherwise provided herein, and claims, demands, and rights in action which can be collected by him, and bonds and stocks when the sale thereof is not necessary to pay debts; and also except the following:

"(5) The executor * * * within one year after his appointment, unless for good cause shown further time is granted by the Probate Court, and unless he has made or is able to make distribution in kind to the parties who are entitled to their respective portions of the estate in his hands, may sell either at public or private sale, any * * * bonds and stocks by first obtaining an order of the Probate Court therefor."

The intervening provisions contained other exceptions.

Now was it the intention of the legislature to impose an absolute duty upon fiduciaries to sell the chattels of estates and particularly stocks within three months after their appointment, no matter how involved in debt the condition of the estate happened to be? We think not.

In determining the legislative intent too much emphasis need not be given to par-

ticular words. The entire enactment should be considered to determine the spirit and meaning. 37 O. Jur., 672. And if two constructions are possible the one that conforms to reason and justice must be presumed to have been the one intended. 37 O. Jur. 629, 646, 647. The primary rule is that the legislative intent controls. 25 R.C.L. 960, 961.

In only the uncomplicated estates can it be determined with any precision within three months what the total amount of the valid debts is. Only the aggregate of the admitted debts could be determined within that time. Unknown debts might exist and do frequently and are presented for allowance after the expiration of three months. Claims may be presented which are rejected and subsequently are held to be valid claims. Many circumstances may exist which will cast doubt upon the value of the tangible personal property and the amount of the valid debts. The whole estate may be overshadowed by contingencies.

To hold that §10697, GC, imposed an absolute duty upon fiduciaries, would require them to determine the validity of claims, to anticipate the future and resolve all other contingencies and uncertainties, and all this at the hazard of becoming personally liable while attempting in all honesty and care to resolve order out of a chaos which they had nothing to do with creating. We can not conclude that the legislature intended to impose any such obligation upon executors or administrators.

In the case at bar it was impossible to do more than estimate the amount of the indebtedness during the three months period. It depended upon the amount of recoupment from The W. H. Anderson Company and other considerations, such as the amount of the inheritance tax. There probably were other contingencies. All these contingencies would have had to be decided adversely to the estate in order for the executors to be certain enough had been sold. And even then there would have been a doubt. And then if, perchance the event proved that more stock was sold than necessary, the charge of mal-administration would confront the executors if the market turned upward.

The record shows that the executors acted in good faith and with reasonable dispatch under the order of the Probtae Court, and there is a specific finding that there was no bad faith, fraud, or negligence in the administration of the estate.

That "shall" in relation to time does not always express an absolute limitation, and that "may" sometimes is mandatory is demonstrated by the many illustrative cases collected in Words and Phrases under the heading "Shall (In statutes as permissive or mandatory)". We also refer to the rule stated in 37 O. Jur. 333, on this subject. We do not make a detailed analysis of the section to show that the use of the word "shall" in the one instance was not intended in a mandatory sense. Suffice it, to say in conclusion, that in our opinion the whole section, the subject-matter, and the long established interpretation is opposed to imputing that meaning to the word.

We find, therefore, on the first issue in favor of the appellees.

The second issue relates to the valuation placed by the executors upon The Procter & Gamble Company stock for the purposes of Item Five of the will. By that Item, the testator provided, so far as is important in this case, that:—

"ITEM FIFTH: I give and bequeath to The Central Trust Company of Cincinnati, Ohio, in trust, however, six hundred (600) shares of the common capital stock of The Procter & Gamble Company. Should at the distribution of my estate, the said six hundred shares of The Procter & Gamble Company be worth at market prices less than sixty thousand ($60,000.00) dollars, then my executors shall pay to said Central Trust Company, the difference in value in cash, to be held and invested and reinvested by it in securities authorized to be made by guardians under the laws of the State of Ohio. * * *"

The transfer from the executors to the trustee under this item actually took place on January 12th, 1933, but in determining the amount of cash that should be paid they treated the transfer as though it had been made on December 14th, 1932 and made the computations on the basis of the market value of the stock on that date.

From about December 12th, 1932 to January 12th, 1933, the executors had been engaged in selling stocks to obtain the money necessary to pay the debts and the various legacies including that necessary to satisfy the terms of Item Fifth, and on the latter date all or substantially all the debts were paid and all the legacies excepting the residuary legacy. Practically

all of the residue of the estate was delivered to the residuary legatees in July, 1933, only small items of comparatively little value remaining to be administered. The estate has not, however, been completely administered to this date.

It is the contention of the appellants that the executors erred in fixing the value of The Procter & Gamble Company stock as of the 14th day of December, 1932. They assert that the testator fixed the time in Item Fifth and that that time was in July, 1933, when the residue was delivered to them.

The market value of the stock of The Procter & Gamble Company was higher in July, 1933 than it was on December 14th, 1932, and, as a result, if July, 1933, is the correct date for fixing the valuation, the executors paid several thousand dollars too much to the trustee under Item Fifth.

If January 12th, 1933, when the bequest was actually delivered to the trustee is the correct date for fixing the value of the stock, then the residuary legatees have suffered no damage, as the value was less on that date than on December 14th, 1932.

We find nothing in the will fixing the specific date when the valuation was to be made. It was to be fixed at the time of distribution, whenever that took place. The testator made no attempt to dictate the time of distribution. He certainly contemplated that the payment of the legacy provided in Item Fifth was a part of the transaction denominated by him "Distribution."

In this case, as is not unusual, there were several partial distributions of assets. We find nothing in the language of the will that would point to a distribution to the residuary legatees rather than the one to other legatees as the one contemplated by the testator.

It has been held that in the absence of a clear expression in the will to the contrary, legacies are due one year after the notice of appointment of the executor, and if payment is delayed draw interest from that date. **Gray v Case School, 62 Oh St 1, 41 O. Jur. §972, et seq.** As The Procter & Gamble Company stock was worth more on the date of actual distribution, it is not necessary for us to determine whether the law fixed one year after the notice of appointment of the executor, as the date for making the calculation in the absence of a contrary testamentary intent, or whether there is such a contrary testamentary intent in this case. As has

already been said, the residuary legatees suffered no damage by the act of the executors selecting December 14th, 1932 instead of January 12th, 1933.

For these reasons, the judgment of the Court of Common Pleas is affirmed.

ROSS, PJ, and HAMILTON, J, concur.